DART et al. v. SAYLOR ELECTRIC CO.†

(Circuit Court of Appeals, Third Circuit. April 6, 1914.)

No. 1834.

PATENTS (§ 328*)—VALIDITY—CONDUIT FOR ELECTRIC WIRES—INFRINGEMENT.
    The Speer patent, No. 693,916, for a conduit for electric wires, claims 2 and 6, held to involve inventive originality, not anticipated, and infringed by a conduit constructed by defendant under the Saylor patent, No. 1,049,771.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit in equity by Russel Dart and others against the Saylor Electric Company. Judgment for defendant (210 Fed. 462), and complainants appeal. Reversed and remanded.

Charles F. Perkins, of Boston, Mass., for appellants.

C. M. Clarke, of Pittsburgh, Pa., for appellee.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. In this case Dart and others, plaintiffs and owners of patent No. 693,916, granted February 25, 1902, to Edward D. and Horace N. Speer, for a conduit for electric wires, charged the Saylor Electric Company with infringement thereof. On final hearing, the court below, in an opinion reported in 210 Fed. 462, held infringement had not been shown and dismissed the bill. Thereupon the plaintiffs took this appeal.

The patent concerns flexible conduits for electric wires. As the specification of this patent states:

"In order to be practicable, safe and durable, the duct must be so constructed that it shall be waterproof to prevent deterioration from moisture, that it shall be fireproof to prevent ignition by a possible electric spark, and that it shall be flexible, so that it can be readily carried around the corners and bends which are frequently found in buildings without breaking or buckling."

The first patented development of a flexible conduit appeared in patent No. 456,271, of July 21, 1891, to Herrick. This conduit was commercially developed and extensively used, and was commercially known as Circular Loom. Its essential features were, first, an inner resilient helix; second, wrappings to cover the helix and close the spaces between its convolutions; and third, a woven outer jacket. By suitable treatment it was made waterproof and fireproof, or at least not readily inflammable. It will be seen that when a tube is bent to turn a corner, it tends to flatten or collapse. Herrick prevented such collapse and secured a circular instead of an angular turn by his interior spiral member, the patent stating:

"By forming the lining as a spiral, the requisite flexibility is secured, and this flexibility is increased by slightly separating the turns of the spiral."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
†Rehearing denied May 20, 1914.

It was found, however, that this circular loom device was subject to objections, among which we note the electric wires when forced through the tube were liable to catch the edges of the helix and were thus stopped. Moreover, unprincipled contractors, owing to the helix being loose, were able to tear it out and thus evade specifications calling for conduits of large diameter. In 1904, it was dropped by the National Board of Underwriters as an approved device. This latter difficulty was obviated by patent No. 652,806, granted July 3, 1900, to Harry G. Osburn, for a flexible electrical conduit. In this construction longitudinal threads were interwoven into the helix which prevented its being either stretched or removed. But while this was so, the rolls of thread, while preventing removal of the helix, acted as an obstruction to the introduction of electric wires. Such was the nature of flexible conduit development when the Speers devised the simple but effective device of the patent in suit. They first provided a flexible inner tube, which would alone come in contact with the electric wires that were being forced through such tube, and made it so smooth that it would not hinder the passage of the wire. The tube was, as stated in the patent—

"formed in any suitable manner—as for example, on a mandrel—and of any suitable material, as paper or muslin, or other like material, the meeting edges * * * making a lapped joint and being cemented together."

It had a longitudinal seam and was suitably treated so as to become both fire and water proof.

"While the waterproof coat is still soft and sticky, a cord 6 of any suitable material, as cotton, hemp or other cord, is wound tightly spirally from end to end of the tube 1, the said cord 6 having been first thoroughly saturated with fireproofing solution and dried. The waterproof coat 4 being still sticky and soft, the cord 6 embeds into it and is held firmly upon the tube 1 when the said coat 4 dries. The windings of the cord utilize the principle of the arch to keep the duct open and firm against collapsing when carried around bends."

A cover was then braided from fireproof yarn over the wound cord. After which a coat of waterproof paint was applied to the duct. Upon this device the claims here in question were granted, viz.:

"3. A duct for electric wires having an inner tube composed of a fireproof flexible longitudinally-arranged sheet of material, a waterproof coating thereon, a spirally-wound fireproof cord outside of said tube, a fireproof cover outside of said cord, and a waterproof coating on said cover, substantially as described."

"6. In a duct for electric wires, the combination of an inner flexible longitudinally arranged fireproof sheet forming a tube, a layer of cord around outside said tube, and a cover on the cord, substantially as described."

In all these constructions the function of the spiral winding or helix to prevent conduit collapse was known and utilized. But the novelty of the Speer device consisted in enclosing an inner longitudinally formed tube in an enveloping supporting helix. The result of this was that the inner tube was made to flex in a curve instead of bending at an angle. Moreover, and herein was the novelty, while the helix imparted flexibility and non-collapsibility to the tube, it did not detract from its smooth surface whereon the electric wire could pass. The result was a tube which was smooth, flexible, non-collapsible and from which

the helix could not be detached. The proofs show the Speer device was of merit. As illustrating its advantages, it suffices to refer for example to a single witness who says:

"It is of great practical advantage. It lends strength to the conduit to prevent longitudinal extension and diametrical contraction; it presents a smooth interior through which wires can be easily fished, and it presents an inner tube which cannot be pulled out of the conduit. * * * The longitudinally arranged inner tube of flexible material such as set forth in the specification also prevents any waterproofing or fireproofing material or insulating material, while in its plastic state, from entering the interior of the conduit, to render the same sticky and rough, and whereby the interior of the conduit would be rendered impracticable for the purpose of fishing a wire therethrough."

That it went into rapid, wide and growing use is shown by the sales, which were unusually large. The validity of the patent has been conceded by strong competitors taking license thereunder. The novel combination of a supporting helix inclosing a longitudinally formed tube was found in no prior structure. We are of opinion such combination involved invention. A collapsible inner tube made noncollapsible by an inclosing spiral without losing flexibility, was a device involving marked originality. It will thus be seen that the inventive feature of the device was not in the particular character of the tube, for there was no novelty in a longitudinally formed tube. Nor did it lie in the particular character of a supporting helix, which was itself old. These elements and their functional characteristics were not new, but what this patent did first disclose was placing the two in a new relation to each other, namely, the supporting helix around the longitudinal tube. This relation and the result produced were both new. What was accomplished by this simple and effective device was a step that was for some years vainly sought for by those skilled in the art. The patent is therefore one of substantial merit and the patentees should be protected to the full extent of the disclosure they made. So regarding the patent, we think the defendant infringes.

Its conduit is made substantially under patent No. 1,049,771, granted January 7, 1913, to F. D. Saylor for a conduit for electrical conductors. The specification thereof shows an inner tube of fireproof canvas, with longitudinally abutting edges, thus providing a smooth interior. This tube is then subjected to a bath of caladium, pitch and asphaltum, and, while the coating is soft the tube is annularly wound with spirally arranged strips of fabric or duck or of any suitable fibrous materials, in this case a helically wound strip of compressed paper fiber. This paper sleeve is stiffened by the asphaltum with which it is treated and becomes from its spiral winding resilient, so that for functional purposes it is the equivalent of Speer's enveloping helix, and falls within the broad definition which the patentee gave to the word cord in the specification and claims, namely:

"Any filamentary body which is capable of being wound around * * * the inner tube."

Formed around its longitudinal canvas tube, the two unite to form a conduit which embodies every feature of the Speer device. Had it existed in the prior art it would have completely anticipated every

disclosure of the Speers. Post-dating that patent, it as clearly infringes as it would have anticipated it had it ante-dated that patent.

The decree below must therefore be reversed and the case remanded with directions to enter a decree holding infringement of claims 3 and 6, and ordering an accounting.